Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

*[Additional counsel on signature page]*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY FRANCHI, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OCERA THERAPEUTICS, INC., ECKARD WEBER, LINDA S. GRAIS, WILLARD DERE, STEVEN P. JAMES, NINA KJELLSON, ANNE M. VANLENT, WENDELL WIERENGA, MAK LLC, MEH ACQUISITION CO., and MALLINCKRODT PLC,<br><br>Defendants. | Case No. _____<br><br>CLASS ACTION<br><br>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>JURY TRIAL DEMANDED |

### COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on November 2, 2017 (the "Proposed Transaction"), pursuant to which Ocera Therapeutics, Inc. ("Ocera" or the "Company") will be acquired by affiliates of Mallinckrodt plc.

1
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

2. On November 1, 2017, Ocera's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with MAK LLC ("Parent"), MEH Acquisition Co. ("Merger Sub"), and Mallinckrodt plc (together with Parent and Merger Sub, "Mallinckrodt"). Pursuant to the terms of the Merger Agreement, Merger Sub launched a tender offer (the "Tender Offer") to acquire all of the Company's outstanding common stock for: (i) $1.52 per share in cash, and (ii) one contingent value right ("CVR") per share, which represents the contractual right to receive one or more payments in cash currently estimated to be up to $2.58 in the aggregate, contingent upon the achievement of certain milestones. The Tender Offer is scheduled to expire on December 8, 2017.

3. On November 9, 2017, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a

2
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Ocera common stock.

9. Defendant Ocera is a Delaware corporation and maintains its principal executive offices at 555 Twin Dolphin Drive, Suite 615, Redwood City, CA 94065.  Ocera's common stock is traded on the NasdaqCM under the ticker symbol "OCRX."

10. Defendant Eckard Weber ("Weber") has served as Chairman of the Board of Ocera since July 2013.

11. Defendant Linda S. Grais ("Grais") has served as a director, President, and Chief Executive Officer ("CEO") of Ocera since July 2013.

12. Defendant Willard Dere ("Dere") has served as a director of Ocera since October 2016.

13. Defendant Steven P. James ("James") has served as a director of Ocera since September 2014.

14. Defendant Nina Kjellson ("Kjellson") has served as a director of Ocera since July 2013.

15. Defendant Anne M. VanLent ("VanLent") has served as a director of Ocera since July 2013.

16. Defendant Wendell Wierenga ("Wierenga") has served as a director of Ocera since December 2013.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18. Defendant Mallinckrodt plc is an Irish public limited company, the ultimate parent entity of Parent and Merger Sub, and a party to the Merger Agreement.

19. Defendant Parent is a Delaware limited liability company, an indirect wholly-owned subsidiary of Mallinckrodt plc, and a party to the Merger Agreement.

20. Defendant Merger Sub is a Delaware corporation, a direct wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Ocera (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of November 1, 2017, there were 26,514,134 shares of Ocera common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent

counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

28. In July 2013, Ocera completed a reverse merger with Tranzyme, Inc. ("Tranzyme"), a biotechnology company that completed its initial public offering in April 2011. As a result of the reverse merger, Ocera, which was a privately held company, became a wholly-owned subsidiary of Tranzyme, which was renamed to "Ocera Therapeutics, Inc." immediately following the merger.

29. Ocera is a clinical-stage biopharmaceutical company targeting acute and chronic orphan liver diseases. The Company's initial focus is the development and commercialization of a clinical product candidate, OCR-002, in both intravenous ("IV") and oral formulations, for the treatment of acute and chronic hepatic encephalopathy ("HE"). HE is a serious complication of liver cirrhosis, or liver failure, marked by mental changes including confusion, impaired motor

skills, disorientation in time and space, and, in its more severe form, stupor, coma and even death.  Of the 5.5 million individuals in the United States that have cirrhosis, approximately 1.5 to 2.0 million are at risk for developing HE.  Approximately 200,000 of these individuals are hospitalized with overt HE per year in the United States.

30.   OCR-002 is a novel molecule, ornithine phenylacetate, which functions as an ammonia scavenger and which, according to the Company, is the only direct ammonia scavenger currently in clinical development for the treatment and prevention of HE.  In January 2017, Ocera announced the top-line results from its exploratory study, STOP-HE, a Phase 2b clinical trial evaluating the safety, tolerability and efficacy of intravenously-administered OCR-002 in hospitalized patients with HE.  The data showed that OCR-002 was both safe and well-tolerated at all dose levels evaluated.

31.   Ocera is also developing an oral form of OCR-002 with the goal of providing continuity of care for HE patients post discharge in order to prevent subsequent episodes of acute HE.  In January 2017, Ocera completed a Phase 1 clinical trial with an orally administered liquid formulation of OCR-002 in patients with cirrhosis.  In this open-label crossover study, OCR-002 was observed to be safe and well-tolerated with favorable pharmacokinetics ("pK"), including absolute bioavailability of greater than 95%.  In the fourth quarter of 2015, Ocera completed a Phase 1 clinical trial with oral formulations of OCR-002 in healthy subjects.

32.   In February 2015, the Company announced the preliminary topline results of the second part of a Phase 2a investigator-sponsored trial in Spain, which evaluated an IV formulation of OCR-002 in patients with upper gastrointestinal bleeding associated with liver cirrhosis.  In the first part of this trial, a 10-patient open label safety cohort, OCR-002 was shown to lower ammonia when administered as a continuous intravenous infusion of up to 10 grams per

24 hours. The second part of this trial was a randomized, placebo-controlled cohort of 38 patients receiving either 10 grams per 24 hours of OCR-002 or placebo as a continuous intravenous infusion for five days. The data showed that over the first 12 hours of dosing, OCR-002 lowered ammonia by 19.6% compared to 3.2% in the placebo group, but this difference did not reach statistical significance.

33. OCR-002 has been granted orphan drug designation and Fast Track status by the FDA for the treatment of hyperammonemia and resultant HE in patients with acute liver failure and acute-on-chronic liver disease. OCR-002 has also been granted orphan drug designation in the European Union for the treatment of acute liver failure. In December 2008, Ocera licensed rights to OCR-002 from UCL Business PLC, an entity affiliated with University College London, for the exclusive worldwide rights to develop and commercialize OCR-002 and related technologies for any use. Ocera is also building intellectual property protection of OCR-002.

*The Solicitation Statement Omits Material Information, Rendering It False and Misleading*

34. On November 9, 2017, defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

35. The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.

36. The Solicitation Statement omits material information regarding the Company's financial projections and the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, MTS Health Partners, L.P. (collectively with its affiliate MTS Securities LLC, "MTS").

37. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows

7
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

38. With respect to Ocera's financial projections, the Solicitation Statement discloses certain Ocera projections for non-GAAP (generally accepted accounting principles) metrics, including EBIT and Unlevered Free Cash Flow, but it fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

39. To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. Indeed, defendants acknowledge in the Solicitation Statement that:

> These non-GAAP financial measures should not be considered as an alternative to operating income or net income as measures of operating performance, or as an alternative to cash flows, as a measure of liquidity. They also should not be considered in isolation from, or as a substitute for, financial information presented in accordance with GAAP. The Company's calculation of non-GAAP financial measures may differ from others in its industry and the non-GAAP financial measures in these tables are not necessarily comparable with similar titled measures used by other companies.

40. As such, stockholders are entitled to the line item projections used to calculate the Company's non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

41. Additionally, the Solicitation Statement indicates that, on June 20, 2017, the

8
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Board approved management's projections of Ocera as a standalone company, which MTS subsequently used to perform valuation analyses of Ocera. However, on August 27, 2017, the Board approved a different set of financial projections of Ocera that were revised downward by Company management in light of "feedback from potential partners." Although the Solicitation Statement provides some of the financial projections of the lower set of projections relied upon by MTS to perform its final valuation analyses, it fails to disclose the first set of financial projections that were created in the normal course of business and approved by the Board on June 20, 2017. The Solicitation Statement, moreover, fails to provide a full disclosure of the reason and manner in which Ocera management revised the Company's projections downward.

42. With respect to MTS's Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) the line item projections underlying the Company's projected unlevered free cash flows for years 2017 through 2030, including taxes, depreciation and amortization expenses, change in net working capital, and capital expenditures; (ii) the actual inputs and assumptions underlying the discount rate range of 18% to 22% used by MTS in its analysis; and (iii) the implied values of the Company without the application of the "probability of commercial success" factor provided by Company management.

43. With respect to each of MTS's Publicly Traded Comparable Companies Analysis and Selected Acquisitions Analysis, the Solicitation Statement fails to disclose whether MTS reviewed or calculated any trading multiples of the selected companies or transactions, and if not, MTS's reason for failing to do so. The comparable companies and precedent transaction analyses are typically performed by calculating trading multiples (e.g., price-to-earnings, enterprise value-to-EBITDA) for the selected companies and transactions, which serve as the basis for extrapolating a valuation for the target company (Ocera here) by applying selected

trading multiples to the target's relevant financial statistics.

44.  As it is currently disclosed, it appears that MTS simply reviewed certain numeric values of the selected companies and transactions, and did not review or divide those values by any financial statistics, thus defeating the purpose of the comparable companies and precedent transaction analyses. Accordingly, stockholders are entitled to understand if MTS reviewed or calculated any trading multiples of the selected companies or transactions, and if not, MTS's reason for failing to do so.

45.  The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following sections of the Solicitation Statement: (i) "Background of the Transactions; Reasons for the Recommendation of the Board;" (ii) "Opinion of the Company's Financial Advisor;" and (iii) "Certain Prospective Financial Information about Ocera Provided to Mallinckrodt, the Company's Financial Advisor and the Board."

46.  The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Ocera's stockholders.

## COUNT I

**(Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)**

47.  Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

48.  Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

49.  Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein

10
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

not misleading.

50. The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

51. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

52. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

53. The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

54. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

55. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

56. Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

57. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

58. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

59. Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or

reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

60. Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

61. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

62. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

63. The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

64. Plaintiff and the Class have no adequate remedy at law.

## COUNT III

**(Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants and the Mallinckrodt)**

65. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66. The Individual Defendants and Mallinckrodt acted as controlling persons of Ocera

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Ocera and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

67. Each of the Individual Defendants and Mallinckrodt was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

68. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

69. Mallinckrodt also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

70. By virtue of the foregoing, the Individual Defendants and Mallinckrodt violated Section 20(a) of the 1934 Act.

71. As set forth above, the Individual Defendants and Mallinckrodt had the ability to

13
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

72.     As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

73.     Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: November 17, 2017

WEISSLAW LLP

By: _____
Joel E. Elkins
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

---

15
COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934